UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,                                    CRIMINAL ACTION

VERSUS                                                       NO. 13-127

JB TAX PROFESSIONAL SERVICES                                 SECTION "C" (2)
INC., *Et al*

## ORDER AND REASONS

This matter comes to the Court on the motion for release of funds by JB Tax Professional, Inc. ("JB Tax"). Rec. Doc. 217. The motion was originally styled as an *ex parte*/consent motion; however, after the government clarified its opposition to the request, the parties submitted briefs on their respective positions, Rec Docs. 238, 248, & 256, and the Court took the matter under advisement as an opposed motion. JB Tax initially requested the immediate release of $200,000. However, in light of the government's opposition, they are seeking an adversarial hearing at which the government will be required to show cause why the amount requested should not be released. Rec. Doc. 248 at 1. Having reviewed the memoranda of counsel and considering the record and the applicable law, the Court DENIES the motion and appoints counsel *pro bono* to represent JB Tax at trial, for reasons explained more fully below.

**I. Facts and Procedural History**

In the superseding indictment, the Grand Jury charges that JB Tax conspired with codefendants to prepare and submit fraudulent applications for tax payer identification (ITINs), and to use those ITINs to prepare and submit fraudulent income tax returns. Rec. Doc. 148 at 7-8. JB Tax is accused of acting as an agent certified by the IRS to submit ITIN applications and

1

submit income tax returns on behalf of ITIN applicants. *Id.* at 4.The indictment states that JB Tax profited from its involvement in the conspiracy through the collection of fees for preparing and submitting false income tax returns. *Id.* at 8. The fees are alleged to have been debited from the amounts refunded for the fraudulent returns in some cases. *Id.* The Grand Jury also charged JB Tax with conspiracy to commit money laundering in relation to the fees it collected from its coconspirators. *Id.* at 19.

The Grand Jury found probable cause for forfeiture of property derived from and/or traceable to JB Tax's participation in the charged conspiracies under the criminal fraud and money laundering forfeiture statutes. *See* 18 U.S.C. §§ 981(a)(1)(C), 982, 1956(h); 28 U.S.C. 2461(c). The superseding indictment described two bank accounts in JB Tax's name at First Metro Bank with sums totaling $173,427.33. Rec. Doc. 148 at 21. On June 3, 2013, the Magistrate Judge issued seizure warrants for the bank accounts described.

## II. Controlling Law

Corporations, such as JB Tax, enjoy the same Sixth Amendment rights as individual defendants. *See United States v. Thevis*, 665 F.2d 616, 645 n.35 (5th Cir. 1982) ("The sixth amendment guarantees apply generally to an 'accused'; a corporation which is a defendant at trial is an 'accused' within the meaning of the amendment and enjoys the protection afforded by it."). The Sixth Amendment right to appointment of counsel only extends to cases where the accused is in jeopardy of his life or liberty. *See Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979). There is general consensus that CJA funds are not available to fund the defense of an indigent corporation. *See In re Grand Jury Proceedings*, 469 F.3d 24, 26 (1st Cir. 2006); *United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997); *United States v. Unimex,*

*Inc.*, 991 F.2d 546, 550 (9th Cir. 1993); *United States v. Rivera*, 912 F. Supp. 634, 637 (D.P.R. 1996); *United States v. Johnson*, 98-276, 1999 WL 569528 at 3* (E.D. La. Aug. 3, 1999)."Thus, corporations have a right to counsel, but no right to appointed counsel, even if they cannot afford to retain their own." *Unimex*, 991 F.2d at 550.

Notwithstanding the Sixth Amendment's guarantee of the right to counsel, under 18 U.S.C. § 853, made applicable to this case through 18 U.S.C. §§ 981(a)(1)(C) and 982(a), a criminal defendant has no right to use forfeitable assets to employ counsel. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S. Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Monsanto*, 491 U.S. 600, 109 S. Ct. 2657, 105 L.Ed.2d 512 (1989). Where an "indigent" corporation cannot hire counsel due to a pretrial asset seizure, it will be entitled to an adversarial, post-restraint, pretrial hearing to contest seizure only when due process so requires. *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475 (5th Cir. 2007). To determine when due process requires such a hearing, the Fifth Circuit has instructed courts to apply the "time-honored test" of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), taking into account:

> the private interest that will be affected by the restraint; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the burdens that the hearing would entail.

*Holy Land*, 493 F.3d at 475.[1]

---

[1] JB Tax has expressed uncertainty regarding the applicability of the *Holy Land* test, in light of the fact that it involved a civil injunction under 18 U.S.C. § 853(e)(1), as opposed to a warrant of seizure under § 853(f). That distinction would be material, only if Fed. R. Civ. P. 65, governing the procedure for injunctions, had impacted the holding of the case. However, the *Holy Land* Court reached the opposite conclusion; the test it announced was predicated on the requirements of due process alone, which would apply to any restraint realized under 18 U.S.C.

Other Circuits have adopted tests that impose more definite burdens upon the defendant, as opposed to allowing the court to perform a balancing test in the manner contemplated under *Mathews v. Eldridge*. *See United States v. Farmer,* 274 F.3d 800, 804-05 (4th Cir. 2001); *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998). The Fifth Circuit has not authorized the imposition of such burdens. *But see Holy Land*, 493 F.3d at 476 n.10 (finding that "the first of the *Eldridge* factors largely disposes of the issue in this case"). This Court will not apply the "*Jones-Farmer*" test to this case but will nevertheless refer to it as persuasive authority on how to interpret and apply the *Mathews v. Eldridge* test to the present circumstances.

## III. Analysis

### A. Private Interest Affected by the Restraint -

The Fifth Circuit has stated that "a property owner's interest is particularly great when he or she needs the restrained assets to pay for legal defense on associated criminal charges or to cover ordinary and reasonable living expenses." *Id.* at 475; *see also Jones*, 160 F.3d at 647 ("As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family."). In this case JB Tax's codefendant and sole shareholder, Jacqueline Arias, has sworn JB Tax has no other funds with which to mount a defense and that the seizure of its assets has forced it to discontinue operations. Rec. Doc. 248-1. Since this affidavit was submitted, the government has not disputed its contents.

---

§ 853. *See Holy Land*, 493 F.3d at 476 ("Under the rule we announce today, however, there is no need to consider Rule 65, and there are no such protections for 'adverse parties.' Instead, if the Ungars wish to challenge the district court's order, they must be able to satisfy the *Eldridge* factors.").

The government argues that JB Tax has no lawful interest in the assets restrained because it has none that are ultimately separable from Ms. Arias. However, the government has not shown that Ms. Arias abused the corporate form in this case. Moreover, assuming that she did, the government provides no authority for the idea that abuse of the corporate form can nullify a corporation's constitutional right to due process and counsel. *See Ne. Georgia Radiological Associates, P.C. v. Tidwell*, 670 F.2d 507, 512 (5th Cir. 1982) ("A corporation is a 'person' who possesses . . . due process rights.").With respect to this criminal case, Ms. Arias is JB Tax's codefendant and shareholder. She is entitled to have her interests represented in both capacities.

*B. Risk of Erroneous Deprivation -*

Although a jury trial serves as an adequate safeguard against permanent erroneous deprivation of property, the risk of temporary erroneous deprivation pending the outcome of a trial has due process significance. *See Jones*, 160 F.3d at 646 (citing *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S. Ct. 492, 501, 126 L. Ed. 2d 490 (1993)). The *Jones* Court required that the defendant put forward a *prima facie* showing that the grand jury erred in determining that the assets seized constitute or are derived from proceeds of the charged offense or were used or intended to be used to facilitate the charged offense. *Id.* at 647. Although the Fifth Circuit has not adopted any such formal requirement, some reason to doubt that probable cause exists must be shown in order to reconcile this caselaw with *Caplin & Drysdale* and *Monsanto, supra*. Nevertheless, the Court rejects the government's suggestion that JB Tax must show by a preponderance of the evidence that probable cause was lacking as to the assets seized. That more exacting burden of proof would apply to the defendant, only at the adversarial hearing, if it is granted. *Farmer*, 274 F.3d at 805.

5

For probable cause to exist for forfeiture in this case, there must be evidence sufficient to cause a person of ordinary prudence to believe that the property at issue was or derived from proceeds traceable to fraud, or, alternatively, that the property was involved in a money laundering offense or traceable to property involved in such an offense. *See* 18 U.S.C. § 981(a)(1)(C) (property is subject to forfeiture if it "constitutes or is derived from proceeds traceable to" a fraud violation); *id.* § 982(a)(1) (property subject to forfeiture if it is "involved in" a money laundering offense or traceable to such property); *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973) ("Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief . . .").

JB Tax first argues that there is reason to doubt the existence of probable cause because Ms. Arias, as its agent, was insufficiently implicated in the conspiracy and money laundering charged in the indictment. However, in a recorded conversation with a confidential informant, one codefendant stated that the "*business*" of the tax returns consisted of listing multiple fictitious dependents and that the tax lady "knows the *business*." Rec. Doc. 256-1 at 20, 30 (emphasis supplied in transcript). This statement is made in response to the informant stating "Well if you're going to show up with a different name and the same face." *Id.* Although the witness insists that the business is done "legally," it is reasonable to read this to refer to Ms. Arias's status as a Certified Acceptance Agent with the IRS, rather than implying her innocence of the crime charged or ignorance of the codefendants' wrongdoing. *See id.* at 29 ("It's that she works for the IRS; what I do to her is, is . . . it's legal."). Even if this were insufficient to establish probable cause, the warrant affidavit states that subsequent investigation confirmed that Arias directed her runners to sign different names to returns, checks, and other documents in her

6

presence. Rec. Doc. 248-2 at 48-50. There is no indication that probable cause was lacking with respect to JB Tax's involvement in the crimes charged.

JB Tax next argues that there is reason to doubt the existence of probable cause to seize all $173,427.33 restrained in this case because that amount is not justified on the face of the indictment or in the contents of the affidavit supporting a search of the defendant's property. In particular, it argues that the government has failed to identify in those documents a sufficient number of allegedly fraudulent, fee-generating transactions to justify seizure of all of its assets.

Although JB Tax's argument is arithmetically sound,[2] it fails to identify a meaningful risk of erroneous deprivation for two reasons. First, the argument assumes, without citing or offering any evidence, that JB Tax had substantial, legitimate gross receipts during the time period of the alleged conspiracy. By contrast, in *United States v. Unimex* and *United States v. Farmer*, where the defendants were found to be entitled to a post-restraint, pretrial hearing, the defendant presented affirmative evidence that a certain amount of their seized assets were legitimate. *See United States v. Farmer,* 274 F.3d 800, 805 (4th Cir. 2001) ("[O]ne of Farmer's attorneys has submitted an affidavit under oath stating that Customs officials personally admitted to him that

---

[2]The government has come forward with evidence tending to show that JB Tax received a $200 to $300 dollar fee for filing fraudulent tax returns in furtherance of the alleged conspiracy. Rec. Doc. 256-1 at 30. The indictment identifies twelve allegedly fraudulent returns that JB Tax allegedly submitted in furtherance of the conspiracy. Rec. Doc. 148 at 9-14 (Overt acts 1, 2, 7, 8, 10, 13, 14, 18, 21, 22, 24, and 28). However, that number of returns would only generate between $2,400 and $6,300 in fees.

The search warrant affidavit states that, between the calendar years 2011 and 2012, the IRS rejected 70 returns out of 3901 filed by JB Tax, or 17.9% of returns that JB Tax submitted during that time. Rec. Doc. 248-2. Crudely extrapolating 70 per two year figure to encompass the entire four years of alleged conspiracy, this works out to between $28,000 and $42,000, still well shy of the $173,427.33 seized. To equal the $173 thousand figure, the government would need to show between 578 and 867 allegedly fraudulent transactions.

many of the items seized were legitimate dry goods and were not counterfeit and had no unauthorized trademarks."); *Unimex*, 991 F.2d at 550 ("Unimex filed affidavits which, if true, tended to show . . . that the $100,000 sought was not forfeitable."); *see also Jones*, 160 F.3d at 647 (placing burden of production on defendant to establish risk of error in probable cause determination).

The second flaw in this argument is that neither the Magistrate Judge nor the Grand Jury were confined to considering the face of the indictment or the search warrant affidavit when determining whether probable cause existed to seize the assets identified. In particular, the affidavit that JB Tax cites was presented in support of searches upon several residences in the Eastern District of Louisiana and the Northern District of Alabama. Rec. Doc. 248-2 at 1-32. Thus, the failure of these documents to establish probable cause to forfeit the amount of assets seized does not create a meaningful risk that the Magistrate Judge or the Grand Jury reached their determinations in error. Moreover, while the Court notes several flaws in the government's attempts to justify the amount of assets seized in response to this motion,[3] these flaws would only be relevant <u>after</u> the defendant came forward with a *bona fide* reason to doubt the existence of probable cause. The purpose of including this factor in the balancing test is to "spare the Government frivolous challenges that might impede its ongoing criminal investigations." *Holy Land*, 493 F.3d at 475-76. As JB Tax fails to make out a *prima facie* risk of erroneous

---

[3] The government argues that the "average amount of the refunds and the average number of dependents claimed" are a "much better indicator of the volume of fraudulent returns." Rec. Doc. 258 at 6. This conjecture is based on the idea that large numbers of dependents and large-sized refunds are indicative of a fraudulent return. *Id.* at 6-7. However, assuming that there is a magic number of exemptions claimed or a return amount that gives rise to a legitimate inference of fraud, the average across all returns filed does not reveal the number of returns that fall on either side of the line.

deprivation, further consideration of probable cause is unnecessary.

    *C. Government's Interest in Avoiding Hearing -*

Where the accused's right to counsel and due process are concerned, garden variety concerns regarding pretrial hearings are not often persuasive. The government's interest in preserving assets subject to forfeiture is entitled to great weight, *Jones*, 160 F.3d at 647, but this interest can be effectively preserved by placing the final burden of persuasion on the defendant at any pretrial hearing to release assets. Similarly, the governmental interest in preserving prosecutorial resources by avoiding a pretrial hearing need not weigh heavily in the final calculation.

However, in this case, the Court has also been alerted to specific, significant witness security issues, which bolster "the government's legitimate interest in protecting certain evidence and witnesses from pretrial exposure." *United States v. Melrose East Subdivision*, 357 F.3d 493, 507 n.17 (5th Cir. 2004). This consideration weighs heavily against entertaining this matter in an adversarial pretrial hearing.

    *D. Balancing of* Mathews v. Eldridge *Factors -*

The balance of factors in this case clearly weighs against having a pretrial hearing on the restraint of assets. Although the restraint implicates a valid property interest on the part of the defendant corporation, the corporation fails to identify any meaningful risk of erroneous deprivation. Moreover, to require a pretrial hearing on this issue would burden the government's resources and pose a risk to witness security. In light of this balance, the Court will deny the request for pretrial hearing.

However, the Court is mindful of the need for JB Tax to have representation during this

9

proceeding. The Court's authority to appoint counsel *pro bono* under these circumstances is an area of unsettled law. *See United States v. El-Mezain*, 664 F.3d 467, 578 (5th Cir. 2011), *as revised* (Dec. 27, 2011) ("We express no opinion on the district court's inherent power to appoint trial counsel for an unrepresented corporation."), *cert. denied*, 133 S. Ct. 525, 184 L. Ed. 2d 338 (2012) *and cert. denied*, 133 S. Ct. 525 (2012). Nevertheless, in the interests of justice the Court will order that such an appointment take place. *See Rivera*, 912 F. Supp. at 637. Peter Strasser has indicated his willingness to undertake JB Tax's representation *pro bono*. Therefore, Peter Strasser will be appointed.

Accordingly,

IT IS ORDERED that JB Tax's Motion for Release and Exemption of Assets from Forfeiture to Pay Attorneys' Fees and Costs of Defense is DENIED. Rec. Doc. 217.

IT IS FURTHER ORDERED that Peter Strasser is appointed to represent JB Tax in the above-captioned criminal matter.

New Orleans, Louisiana, this 13th day of November, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE